# CIRCUIT COURT OF FAIRFAX COUNTY

Marla Beth Brin

    v.

A Home Come True, Inc., et al.

March 23, 2007

Case No. CL-2005-7510

BY JUDGE KATHLEEN H. MACKAY

The court heard argument on October 12, 2006, upon the motions of Defendants A Home Come True, Inc., Mary Beth Palmer, and Sven O. Gierlinger to vacate the default judgments previously entered against each. The court also heard argument upon the motion of Plaintiff Marla Beth Brin to "Re-Affirm" the default judgments. I have reviewed the parties' memoranda in light of the arguments made at the hearing, and I am now prepared to rule.

## I. *Background*

Plaintiff Brin sought to have her Alexandria home remodeled in the fall of 2003. She contacted Defendants Palmer and Home Come True for a consultation in late September 2003. The substantial renovations included demolition, foundation work, grading, framing, roofing, siding, plumbing, electrical wiring, and the installation of new flooring and fixtures.

Home Come True was licensed to do business in the Commonwealth as a Class A contractor as of June 10, 2002. Defendant Palmer was the president and agent of Home Come True, though she did not hold a contractor's license. Plaintiff alleged that Defendant Michael Drees was a licensed contractor whom Home Come True listed as the "designated employee" and "qualified

individual" on its Class A license. Despite being listed as Home Come True's "designated employee" and "qualified individual" for licensing purposes, Drees was not employed by and did not otherwise perform construction services for Home Come True.

Defendant Gierlinger was Palmer's husband and a co-worker of Drees at a local hotel. Gierlinger allegedly facilitated a relationship between Palmer and Drees for the acquisition a contractor's license for Home Come True. Gierlinger also supervised portions of the work performed on Brin's home, though he did not hold a contractor's license. Defendant William Hoover was a realtor who owned real property in which Palmer had a financial interest. Renovation and construction was marred from the beginning by Defendants' inability to obtain the necessary permits. Plaintiff alleged numerous structural and hazardous defects with the construction.

Brin filed a verified initial pleading on December 8, 2005, titled "Verified Petition for Attachment of Marla Beth Brin against A Home Come True, Inc., Mary Beth Palmer, Sven O. Gierlinger, William Hoover, and Michael Drees." Count I of the eight-count pleading requested a pre-judgment attachment of the real property owned by Hoover, in which Palmer had a financial interest. The remaining counts alleged Fraud (Count II), a violation of the Virginia Consumer Protection Act (Count III), Civil Conspiracy (Count IV), Negligence *per se* (Count V), Constructive Trust (Count VI), Piercing the Corporate Veil of Home Come True, Inc. (Count VII), and Breach of Contract (Count VIII). Plaintiff filed a motion for attachment and a motion for a temporary restraining order on December 15, 2005, noticing a January 6, 2006, hearing on these matters.

Plaintiff presented *ex parte* evidence on December 22, 2005, and the court, by order of Judge Thatcher, granted the pre-judgment attachment of Hoover's real property. Hoover entered an appearance on December 29, 2005. Gierlinger was personally served on December 30, 2005. The Fairfax County Sheriff's Department served Gierlinger with a copy of the initial verified pleadings (titled "Petition for Attachment"), Notice,[1] two sets of Interrogatories, two sets of document production requests, and a copy of Judge Thatcher's December 22, 2005, order. The Fairfax County Sheriff's Department personally served Home Come True and Palmer with the same documents on January 3, 2006. Drees filed an

---

[1] The "Notice" referenced on the Sheriff's return of service was the "Request for Hearing Exemption Claim," Form DC-407, as required by Va. Code § 8.01-546.1.

answer and counterclaim on January 25, 2006. Palmer filed for bankruptcy in federal bankruptcy court on February 1, 2006. Accordingly, the proceedings against Palmer were stayed.

The court, by order of Judge Roush on January 6, 2006, continued a hearing regarding the attachment of Hoover's property because "no one appeared to contest the attachment." On January 20, 2006, the court, by Judge Keith, heard arguments regarding Plaintiff's motion for a restraining order to prevent Defendant Palmer from dissipating assets. The parties left without resolving the matter and no order was entered.

Plaintiff filed a Motion for Default Judgment on February 3, 2006, and noticed a hearing on the one-week docket for February 10, 2006. On February 10, 2006, Judge Stitt entered a default against Home Come True, Gierlinger, and Hoover. No action was taken against Palmer because of the bankruptcy stay. Judge Stitt's order continued the default hearing to February 17, 2006, for *ex parte* proof of damages.

Judge Bellows took Plaintiff's *ex parte* evidence of damages on February 17, 2006, but was not satisfied. The court, by order of Judge Bellows on March 9, 2006, instructed Plaintiff to "provide a detailed memorandum explaining the basis for all damages sought, item by item . . . not later than 14 days from this Order." The court, by order of Judge Bellows on March 27, 2006, requested that Brin provide supplemental information by April 3, 2006. The court, by order of Judge Bellows on April 5, 2006, extended the deadline for Brin to tender the requested supplemental information regarding damages to April 24, 2006. Proceedings were stayed against Gierlinger, by order of Judge Roush, on April 18, 2006, upon a suggestion of bankruptcy, thus damages against Gierlinger fell out of Judge Bellows' calculations.

On June 7, 2006, the federal bankruptcy court dismissed Palmer's case. Brin then filed a Motion for Default Judgment against Mary Beth Palmer on June 9, 2006, noticing a one-week hearing for June 16, 2006. Chief Judge McWeeny heard Plaintiff's motion, entered a default, and granted a default judgment in the amount of $508,183.00 for compensatory damages, punitive damages, attorney's fees, and costs. The court, by order of Judge Williams on July 7, 2006, suspended Chief Judge McWeeny's June 16, 2006, order indefinitely. Judge Williams' reasoning in granting the stay is not known.

On July 12, 2006, Judge Bellows found damages against Home Come True in the amount of $501,585.00. The order also granted a default against Hoover as to the attachment count, requiring Hoover to "pay all monies owed by a Home Come True, Inc., up to the amount of the judgment . . . from the sale or improvement of [the attached property]."

The court, by order of Judge Stitt on September 21, 2006, vacated both Judge Stitt's February 10, 2006, entry of default and Judge Bellows' July 12, 2006, attachment order against Defendant Hoover. Judge Stitt so ruled because Hoover's answer was found to be invalid, as it had been prepared and filed without Hoover's knowledge or consent by attorney Kelly R. Dennis. The court sanctioned Kelly R. Dennis and required him to pay the parties' attorney's fees in the amount of $36,573.00. Judge Stitt then dismissed Hoover from the case. Plaintiff appealed this portion of Judge Stitt's September 21, 2006, order, and that appeal is contemporaneously pending with the Supreme Court.

As of late July 2006, a default judgment with damages had been entered against Palmer, though the judgment order had been stayed indefinitely. The court had also entered a default judgment with damages against Home Come True. A default had been entered against Gierlinger, though no damages had been found because of his stay pending the bankruptcy suit. The court, by Order of Judge Keith on July 20, 2006, denied Plaintiff's December 15, 2005, motion for a restraining order, *nunc pro tunc* to January 20, 2006.

During Judge Williams' stay of Chief Judge McWeeny's June 16, 2006, order, Palmer's defense counsel corresponded with Brin's counsel regarding Palmer's intention to file a motion to vacate Chief Judge McWeeny's default judgment. In advance of Palmer's filing a motion to vacate, Brin filed a motion on August 11, 2006, to "Re-Affirm" Chief Judge McWeeny's entry of default and award of damages. On August 18, 2006, Home Come True filed a motion to vacate Judge Stitt's entry of default from February 10, 2006, and Judge Bellow's July 12, 2006, finding of damages. Palmer also filed a motion on August 18, 2006, to vacate Chief Judge McWeeny's June 16, 2006, entry of default and award of damages.

A hearing on Plaintiff's motion to "Re-Affirm" Defendants' motions to vacate was scheduled for August 25, 2006, before Judge MacKay. The hearing was continued by mutual agreement of the parties to Judge MacKay's October 12, 2006, docket. Defendant Gierlinger's bankruptcy suit was dismissed in the interim on September 13, 2006. On October 4, 2006, Gierlinger filed a motion to vacate Judge Stitt's February 10, 2006, entry of default. Thus on October 12, 2006, the court heard argument upon Defendants Home Come True, Palmer, and Gierlinger's individual motions to vacate their respective defaults. Though Defendants asserted multiple theories for vacating the defaults, Defendants primarily contended that service of process was improper and defective.

Defendant Gierlinger has argued that the default entered against him should be vacated because the initial pleading fails to state a cause of action, citing *Landcraft Co. v. Kincaid*, 220 Va. 865, 865, 263 S.E.2d 419 (1980). This argument is not persuasive, and Defendants' motions to vacate, as they regards Plaintiff's failure to state a claim, are denied. Defendants have, at various times in their pleadings and at oral argument, contended that the default judgments should be vacated for good cause shown. The court finds no good cause to excuse the Defendants' neglect in not filing responsive pleadings, and the Defendants' motions to vacate for good cause are denied.

## II. *Analysis*

The court is asked to determine whether a pleading which contains both a claim for the pre-judgment attachment of a co-defendant's real estate and distinct legal claims against the remaining codefendants properly institutes a suit against all defendants. Plaintiff asserts that a pleading can properly mix allegations necessary for an attachment petition, Va. Code § 8.01-537, with other legal claims. Defendants' arguments suggest that a separate legal suit must be brought by filing a complaint and that failing to do so precludes recovery of claims asserted in a petition for attachment.

Attachment "is neither a formal action at law nor a bill in equity, but a . . . statutory procedure. It is in the nature of a proceeding at law, but with equity powers where necessary to attain the ends of justice." *Winfree v. Mann*, 154 Va. 683, 692, 153 S.E. 837 (1930). Because "attachment is purely a statutory remedy . . . a court, even of general jurisdiction, cannot proceed by attachment unless the power rests upon express statutory authority." *Fauquier Nat'l Bank v. Hazelwood Sav. & Trust Co.*, 165 Va. 259, 263, 182 S.E. 566 (1935).

Attachment is an anarchistic and drastic remedy that deprives a defendant of the use and free alienation of her property *before* judgment, thus it is strictly prescribed by statute to protect the twin aims of securing a debt owed and protecting defendants' due process interests. Though the court's authority to attach the real and personal property of a defendant before judgment is controlled by statute, Va. Code § 8.01-533 *et seq.*, the attachment statutes do not limit the court's authority to determine the remaining legal issues presented in a pleading which both petitions for attachment and pleads a cause at law.

An attachment is valid only if specific procedural requirements have been met. Va. Code §§ 8.01-546, 8.01-569. The reasoning of the *Fauquier Nat'l Bank* Court, considering a statutory precursor, aptly describes the current

Code's "recogni[tion of] certain rights of the debtor." *Id.* at 263. To protect these rights, the statutes "enjoin[] upon the creditor certain procedural requirements which are essentially mandatory for the purpose of safe-guarding these rights. Unless it affirmatively appears that such steps were taken, a valid lien cannot be acquired. Substantial compliance with the present statute is as essential to the creation of a valid lien." *Id.* Service upon the principal defendant of a summons from the Sheriff "to appear and answer the petition for attachment" and a "form for requesting a hearing on a claim of exemption from levy of seizure" are critical procedural prerequisites for a valid attachment. Va. Code § 8.01-546. These documents, when served along with a copy of the petition for attachment, constitute service of process. Va. Code § 8.01-569 (referencing process and service of process generally); § 8.01-550 (stating condition for "[w]henever a copy of an attachment is required or allowed to be served"). Service of process of an attachment action "may be served as a notice is served under §§ 8.01-296, 8.01-299, 8.01-300, or 8.01-301, as the case may be." Va. Code § 8.01-550. The heightened service requirements of an attachment action require only that additional documents be served.

A single pleading that mixes a petition for attachment with additional legal causes creates multiple classes of defendants. If a defendant is subject to the attachment, then service of process prescribed in Va. Code § 8.01-533 *et seq.* is required. Defendants subject only to the legal remedies demanded in the remaining claims are due only traditional service of process provided by Rule 3:3(c). To affect valid service of process under Rule 3:3(a), two documents, "served as a single paper," must be served upon the defendant. *Lifestar Response of Md., Inc. v. Vegosen*, 267 Va. 720, 724, 594 S.E.2d 589 (2004). In addition to a copy of the complaint, the defendant must be served with a summons/notice "which is issued by the clerk and notifies the party being sued that, unless a responsive pleading is filed in the clerk's office within twenty-one days after service of the notice of motion for judgment, default judgment for the plaintiff may be entered." *Id.* "Rule 3:3(c) underscores that these two documents constitute "process," because "no judgment shall be entered against a defendant who was served with process more than one year after commencement of the action against him." *Id.*

Defendants liable under both the attachment claims and the legal claims are entitled to the special process requirements of Va. Code § 8.01-533 *et seq.* Because the service proscribed by § 8.01-533 *et seq.* is designed to provide greater protection of defendants' due process interests, proper service of process of an attachment action constitutes proper service of the remaining legal claims when all claims are contained in the same pleading.

If a plaintiff fails to properly serve a defendant to the attachment count in accordance with the statutory requirements, the attachment may be dismissed. The remaining claims, however, are unaffected if service of process was sufficient to meet the lesser traditional standard. In *Fisher v. Globe Brewing Co.*, 170 Va. 509, 514, 197 S.E. 490 (1938), the Court, considering § 6404 of the Code of Virginia, 1919, held that, "if the court would otherwise have jurisdiction of the action, and the defendant has appeared generally or been served with process, it shall retain the cause and proceed to final judgment in like manner as if it had been a motion matured for hearing." The same is true of attachment actions under the current statutes. Va. Code § 8.01-533 *et seq.*

## III. *Application*

### A. *Service of Process: Gierlinger, Home Come True, Palmer*

The court must determine whether the specific default judgments entered against Home Come True, Palmer, and Gierlinger were valid. Gierlinger contends the entry of default against him is void because service of process was defective. Because Home Come True and Palmer received the same documents during service as did Gierlinger, a defect in Gierlinger's services of process indicates defective service of process to the remaining Defendants. Virginia Code § 8.01-546 requires that each petition for attachment be accompanied by a summons and claim of exemption form. Defendant Gierlinger asserts that service was defective because the court "failed to establish" that a summons and an exemption form were *actually* served. The court first notes that, because neither Gierlinger, Home Come True, nor Palmer were defendants to the attachment count, these defendants are not entitled to the benefit of the heightened service of process requirements provided by § 8.01-546.

Assuming *arguendo* that Gierlinger, Home Come True, and Palmer were entitled to the heightened service requirements of an attachment action, the court finds this burden has been met. Virginia Code § 8.01-546 requires that a summons from the Sheriff "to appear and answer the petition for attachment" and a "form for requesting a hearing on a claim of exemption from levy of seizure" must accompany a petition for attachment. First, the court notes that the Sheriff's return of service indicates that the Petition for Attachment was served. Second, the court takes judicial notice that Defendants received a "Summons" from the Sheriff "to appear and answer the petition for attachment" because every request for service issued to, and

served by, the Fairfax County Sheriff's Department includes such a summons. This document both summons the Defendant and is titled "Summons." Finally, the court is satisfied upon its review of the file and record that a claim exemption form was also served. A copy of the claims exemption form was found in the file along with a copy of the other documents found to have been served. Though the Sheriff's return of service states that a "Notice" and not a "Claims Exemption Form" was filed, the court finds that "Notice" refers to the claims exemption form and not the "Summons" which accompanies all service affected by the Fairfax County Sheriff's Department. The service of these three documents constitutes proper service of process pursuant to Va. Code § 8.01-546. Thus, Defendants Gierlinger, Home Come True, and Palmer received proper service of process and their motions to vacate the default judgments respectively entered against them are denied on this basis.

## B. *Notice of Motion for Default: Palmer*

Defendant Palmer asserts that Chief Judge McWeeny's June 16, 2006, default judgment should be vacated because Plaintiff did not provide proper notice of the default judgment proceedings. Brin contends Palmer was not entitled to notice because she was in default because "[a] defendant in default is not entitled to notice of any further proceedings in the case" and Palmer failed to respond within twenty-one days of service of process on January 3, 2006. Rule 3:19(c). Palmer did not file a responsive pleading within twenty-one days of service of process, and she was, therefore, in default as of January 24, 2006. As a party in default, Palmer was not entitled to notice of any further proceedings or hearings. This default was unaffected by the subsequent February 1, 2006, bankruptcy stay. Therefore, Palmer remained in default when Plaintiff filed for a default judgment on June 9, 2006.

Plaintiff further argues the exception to the above rule, "that written notice of any further proceedings shall be given to counsel of record," is inapplicable. Palmer did not become her own counsel of record despite appearing and arguing before Judge Keith on January 20, 2006, Brin contends. "Rule 1:4(c) mandates that 'Counsel or an unrepresented party who files a pleading shall sign it and state his address.' Rule 1:4(l) requires "counsel of record" to list his or her office address and telephone number at the foot of 'every pleading, motion, or other paper served or filed'." *Walker v. American Ass'n of Prof'l Eye Care Specialists, P.C.*, 268 Va. 117, 120, 597 S.E.2d 47 (2004). Additionally, "Rule 1:5 states that 'Counsel of record' includes a counsel or party who has signed a pleading in the case or who has notified the other parties and the clerk in writing that he appears in the case."

*Walker*, 268 Va. at 120. Palmer neither signed a pleading nor "notified the other parties and the clerk in writing that he appears in the case." *See*, Rule 1:5.

Even if Palmer's January 20, 2006, appearance made her counsel of record, the court is satisfied that Palmer received sufficient notice of the Plaintiff's motion for default. Under Rule 3:19(a), Plaintiff need do no more than give "written notice of any further proceedings." Plaintiff mailed Palmer a copy of Plaintiff's "Motion for Default Judgment against Mary Beth Palmer" and a copy of the Fairfax County Circuit Court's Praecipe/Notice by United States first class mail, postage prepaid, at her known home address. Brin thus provided Palmer with sufficient notice, even if she were counsel of record, by mailing the above Motion for Default and the Praecipe to Palmer's attention at her home address. This conclusion is unchanged by the fact that the Motion for Default and Praecipe was addressed to "A Home Come True, Inc., c/o Mary Beth Palmer" rather than simply to "Mary Beth Palmer."

## IV. *Conclusion*

Upon review of the record and in light of the arguments presented by counsel, Defendant A Home Come True, Inc.'s motion to vacate Judge Stitt's February 10, 2006, entry of default and Judge Bellows' July 12 finding of damages is denied. For the reasons stated in Part II and Part III above, Defendant Sven O. Gierlinger's motion to vacate Judge Stitt's February 10, 2006, entry of default is denied, and the case is continued for Plaintiff's presentation of damages. The stay issued by Judge Williams on July 7, 2006, upon Chief Judge McWeeny's June 16, 2006, entry of a default judgment and finding of damages is hereby lifted, and Defendant Mary Beth Palmer's motion to vacate Chief Judge McWeeny's June 16, 2006, entry of default judgment and finding of damages is denied.